# Matter of Oscar GONZALEZ-ZOQUIAPAN, Respondent

File A97-883-781 - Los Angeles

*Decided June 25, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  A single act of soliciting prostitution on one's own behalf does not fall within section 212(a)(2)(D)(ii) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(2)(D)(ii) (2006), which provides for the inadmissibility of an alien who "procured . . . prostitutes or persons for the purpose of prostitution."

(2)  The respondent's conviction for disorderly conduct relating to prostitution in violation of section 647(b) of the California Penal Code does not render him inadmissible under section 212(a)(2)(D)(ii) of the Act.

FOR RESPONDENT:  Tim Everett, Esquire, Los Angeles, California

BEFORE:  Board Panel:  FILPPU, COLE, and PAULEY, Board Members.

PAULEY, Board Member:

In a decision dated May 3, 2006, an Immigration Judge found the respondent removable on his own admissions and concluded that he is statutorily ineligible for both cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2006), and voluntary departure under section 240B(b)(1) of the Act, 8 U.S.C. § 1229c(b)(1) (2006), because he failed to establish good moral character. The respondent has appealed from the Immigration Judge's denial of relief from removal. The Department of Homeland Security has not filed a brief in this matter. The respondent's appeal will be sustained, and the record will be remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without inspection on or about September 16, 1989. The record reflects that he was convicted on August 21, 2002, of disorderly conduct

relating to prostitution in violation of section 647(b) of the California Penal Code and that he was sentenced to probation.

Citing *Amador-Palomares v. Ashcroft*, 382 F.3d 864 (8th Cir. 2004), the Immigration Judge determined that the respondent's offense of disorderly conduct constitutes procurement of prostitution within the meaning of section 212(a)(2)(D)(ii) of the Act, 8 U.S.C. § 1182(a)(2)(D)(ii) (2006).[1] As a result, the Immigration Judge held that the respondent is unable to establish good moral character under section 101(f)(3) of the Act,  8 U.S.C. § 1101(f)(3) (2006).  The Immigration Judge therefore concluded that the respondent is statutorily ineligible for both cancellation of removal pursuant to section 240A(b)(1)(B) and voluntary departure pursuant to section 240B(b)(1)(B).

## II.  ISSUE

The issue in this case is whether a single act of soliciting prostitution as defined by California law constitutes a ground of inadmissibility within the meaning of section 212(a)(2)(D)(ii) of the Act.

## III.  ANALYSIS

In its entirety, section 212(a)(2)(D) of the Act provides as follows:

> Prostitution and Commercialized Vice
>     Any alien who—
>         (i) is coming to the United States solely, principally, or incidentally to engage in prostitution, or has engaged in prostitution within 10 years of the date of application for a visa, admission, or adjustment of status,
>         (ii) directly or indirectly procures or attempts to procure, or (within 10 years of the date of application for a visa, admission, or adjustment of status) procured or attempted to procure or to import, prostitutes or persons for the purpose of prostitution, or receives or (within such 10-year period) received, in whole or in part, the proceeds of prostitution, or
>         (iii) is coming to the United States to engage in any other unlawful commercialized vice, whether or not related to prostitution,
>     is inadmissible.

Although section 212(a)(2)(D)(ii) of the Act does not require a conviction, the only evidence offered by either party on the issue before us was the

---

[1] In *Amador-Palomares v. Ashcroft*, *supra*, the United States Court of Appeals for the Eighth Circuit accorded deference to an unpublished order of this Board in rejecting the alien's contention that a single act of attempting to solicit a prostitute does not fall within the compass of section 212(a)(2)(D)(ii).

respondent's conviction documents, which specify the statute of conviction, the respondent's plea of nolo contendere, and his sentence to probation. In these circumstances, we must look solely to the statutory definition of the crime to determine whether the respondent's specific offense falls within section 212(a)(2)(D)(ii). Thus, the question we consider is whether the full range of conduct encompassed by the California statute would qualify as a crime of prostitution for purposes of section 212(a)(2)(D)(ii) of the Act. *Kepilino v. Gonzales*, 454 F.3d 1057, 1060-61 (9th Cir. 2006).

Section 647(b) of the California Penal Code provides as follows:

> Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:
>     (b) Who solicits or who agrees to engage in or who engages in any act of prostitution. A person agrees to engage in an act of prostitution when, with specific intent to so engage, he or she manifests an acceptance of an offer or solicitation to so engage, regardless of whether the offer or solicitation was made by a person who also possessed the specific intent to engage in prostitution. No agreement to engage in an act of prostitution shall constitute a violation of this subdivision unless some act, in addition to the agreement, is done within this state in furtherance of the commission of an act of prostitution by the person agreeing to engage in that act. As used in this subdivision, "prostitution" includes any lewd act between persons for money or other consideration.

Thus the California statute states that a person is guilty of disorderly conduct if he or she solicits or agrees to engage in or engages in any act of prostitution. Consistent with the respondent's description of his offense, the Immigration Judge treated the crime as one of solicitation of prostitution rather than one of agreement to engage, or engaging, in prostitution. On appeal, the respondent continues to describe his offense as one of solicitation, although the conviction record does not contain any factual details to delineate the conduct underlying his conviction. We therefore consider first whether the crime of solicitation of prostitution constitutes a ground of inadmissibility under section 212(a)(2)(D)(ii) of the Act.

The language of section 212(a)(2)(D)(ii), on its face, relates only to persons who "procure" others for the purpose of prostitution or who receive the proceeds of prostitution. The dictionary meaning of the word "procure" is generally to obtain or acquire, but as applied to prostitution, it has a specific meaning, i.e., "[t]o obtain [a prostitute] for another." *Webster's II New College Dictionary* 882 (2001); *see also Matter of R-M-*, 7 I&N Dec. 392 (BIA 1957) (finding the respondent inadmissible under the predecessor statute to section 212(a)(2)(D)(ii) for soliciting men for the purpose of sexual intercourse with prostitutes). We agree with the respondent that under the most reasonable interpretation of the statute, the term "procure" does not extend to an act of solicitation of a prostitute on one's own behalf. If Congress had intended to

include "solicitation" of prostitution as a ground of inadmissibility, it could easily have employed that term, as it has done in other provisions of the Act. *See, e.g.*, sections 212(a)(3)(B)(iv)(IV), (V) of the Act.

The history of the prostitution ground of inadmissibility supports this construction. Early immigration laws focused on prohibiting the entry of aliens into the United States for "lewd and immoral purposes" and the "importation into the United States of women for purposes of prostitution." Act of Mar. 3, 1875, ch. 141, §§ 1, 3, 18 Stat. 477. The term "procure" in connection with prostitutes or prostitution appears to have first entered our law in 1903 when Congress broadened the prohibition to include "persons who procure or attempt to bring in prostitutes or women for the purpose of prostitution." Act of Mar. 3, 1903, § 2, 32 Stat. 1213.

Significantly, a report to Congress by the Immigration Commission in 1909 defined a "procurer" of prostitutes as "[a] man or woman who induces *another*, by whatever means, to enter a house of prostitution or to subject herself to *another* in prostitution." U.S. Immigration Comm'n, Report on the Importation and Harboring of Women for Immoral Purposes, S. Doc. No. 61-196, at 3 (2d Sess. 1909) (emphasis added). According to the report, the procurers who recruited women to leave their foreign homes were strictly motivated by "business profit." *Id.* at 6, 8.

In 1917, Congress broadened the exclusion provisions relating to prostitution and provided for the deportation of any alien who was connected with the management of a house of prostitution or who protected any prostitute from arrest. Immigration Act of 1917, §§ 3, 19, 39 Stat. 874. Former section 212(a)(12) of the Act, the direct predecessor of the current provision, included among those who were excludable "aliens who directly or indirectly procure . . . prostitutes or persons for the purpose of prostitution or for any other immoral purpose" and those who received the proceeds of prostitution.[2] Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163. Former section 241(a)(12), enacted at the same time, rendered deportable any alien who was "connected with the management" of a house of prostitution.

Thus, Congress appears to have been primarily concerned with excluding and removing aliens who were involved in the business of prostitution, using the term "procure" in its traditional sense to refer to a person who receives money to obtain a prostitute for another person. Because Congress did not consider someone who solicits another to engage in prostitution for himself to be a procurer, we reject the Immigration Judge's conclusion that such a person

---

[2] The Immigration Act of 1990, Pub. L. No. 101-649, § 601(a), 104 Stat. 4978, 5067-68, renumbered the provision as section 212(a)(2)(D) of the Act and eliminated the language relating to "any other immoral purpose."

is inadmissible under section 212(a)(2)(D)(ii) of the Act. For the same reason we also disagree with *Amador-Palomares v. Ashcroft*, *supra*, on which the Immigration Judge relied.

Even assuming that section 212(a)(2)(D)(ii) reaches the act of soliciting prostitution on one's own behalf, we conclude that the respondent's offense falls outside the purview of the statute. In *Kepilino v. Gonzales*, *supra*, the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, observed that while neither section 212(a)(2)(D) itself nor any regulation of the Attorney General defines prostitution, the Department of State defined the term for purposes of section 212(a)(2)(D) as follows:

> The term "prostitution" means engaging in promiscuous sexual intercourse for hire. A finding that an alien has "engaged" in prostitution must be based on elements of continuity and regularity, indicating a pattern of behavior or deliberate course of conduct entered into primarily for financial gain or for other considerations of material value as distinguished from the commission of casual or isolated acts.

22 C.F.R. § 40.24(b) (2006). The Ninth Circuit found the regulation to be a reasonable interpretation of the statute, a conclusion with which we concur. *Kepilino v. Gonzales*, *supra*, at 1061 n.2.

Applying the definition of "prostitution" in the regulation, the court held that the Hawaii statute was broader than the regulation because it covered sexual acts beyond "sexual intercourse." *Kepilino v. Gonzales*, *supra*, at 1061. Similarly, the court found that Hawaii's law against prostitution included "any" act of sexual conduct and was therefore broader than the regulatory definition of "engaging in" prostitution, which requires proof of a pattern of behavior or deliberate course of conduct entered into primarily for financial gain. *Id.* at 1061-62; *see also Matter of T-*, 6 I&N Dec. 474 (SIO 1954; BIA 1955) (finding that the term "engaged in prostitution" under former section 212(a)(12) means conduct carried on over a period of time and does not extend to a single act of prostitution). Finally, the court stated that there was nothing in the record of conviction to establish that the alien's conduct fell within the definition of "prostitution." *Kepilino v. Gonzales*, *supra*, at 1062-63. For these reasons, the Ninth Circuit concluded that the alien, who was charged under section 212(a)(2)(D)(i) of the Act, was not inadmissible based on her offense. *Id.* at 1063.

The same is true in this case. Section 647(b) of the California Penal Code, which the respondent was convicted of violating, prohibits soliciting, agreeing to engage, or engaging in any act of prostitution, including any lewd act, between persons for money or other consideration. Because section 647(b) includes "lewd acts" within the scope of its prohibited activity, it is broader than the definition of prostitution set forth in the State Department regulation, which requires "sexual intercourse." The California statute also contains no

requirement of a pattern of behavior or deliberate course of conduct, which is necessary to a finding that a person engaged in prostitution under the regulation. *But see Amador-Palomares v. Ashcroft*, *supra* (disagreeing with a district court's holding that a regular pattern of behavior was also required in regard to procuring prostitution). Moreover, the respondent's record of conviction includes no factual details about the offense to indicate that he was engaged in anything more than an isolated act.

In conclusion, we find that section 212(a)(2)(D)(ii) of the Act does not cover acts of solicitation of prostitution on one's own behalf. Even if it did, the California statute criminalizes isolated acts that do not necessarily involve sexual intercourse, so it encompasses conduct broader than that included in the State Department's regulatory definition of prostitution. *See Kepilino v. Gonzales*, *supra*, at 1062. We therefore conclude that a violation of section 647(b) of the California Penal Code does not constitute procuring prostitutes or persons for the purpose of prostitution within the meaning of section 212(a)(2)(D)(ii), even if the offense was committed multiple times with more than one prostitute.

Although the Immigration Judge did not address the issue, we note that there is a question whether the respondent's offense would constitute a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act, which would render him statutorily ineligible for cancellation of removal under sections 240A(b)(1)(B) and (C). Even if we were to conclude that the respondent's conviction is for a crime involving moral turpitude, he would not be precluded from establishing eligibility for cancellation of removal under section 240A(b)(1)(C) because he was convicted of a misdemeanor and the imposition of his sentence was suspended with probation, so his conviction qualifies for the petty offense exception under section 212(a)(2)(A)(ii)(II) of the Act. *See Matter of Garcia-Hernandez*, 23 I&N Dec. 590, 593 (BIA 2003). For the same reason, the respondent is also not barred from establishing good moral character under section 101(f)(3) of the Act and, consequently, is not ineligible for cancellation of removal under section 240A(b)(1)(B). *Id.*

Finally, contrary to the Immigration Judge's finding, we conclude that the respondent is not ineligible for voluntary departure because he is not barred from establishing that he has been a person of good moral character for at least 5 years immediately preceding his application for voluntary departure. *See* section 240B(b)(1)(B) of the Act.

Accordingly, the respondent's appeal will be sustained and the record will be remanded for further consideration of his applications for relief from removal.

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The decision of the Immigration Judge is vacated, and the record is remanded for further proceedings consistent with the foregoing opinion and for the entry of a new decision.